All right, we're going to go ahead without Miss Franklin. Does anybody have any objection to that? She's connecting to her audio. I don't think she's arguing anything. Is that a fair statement? You can start, Justice. Okay, fine. Good afternoon. I'm Justice Aurelia Paczynski in the First Division of the First District of the Illinois Appellate Court. You see before you my colleagues, Justice Michael Hyman and Justice Mary Ellen Coughlin. We're here today to hear oral argument on case number 121-1449, Jason Berg, Plaintiff Appellant v. David Brown, Superintendent of the Police, City of Chicago, Eddie T. Johnson, former Superintendent of Police, City of Chicago, and the Police Board of the City of Chicago Defendants Appellees. Normally, I would just point out to the attorneys who are arguing this that we've read the briefs, we've read the record, we've read the relevant cases, and so we encourage you in the limited time we have available to sort of start with your best points and work your way down from there. Also, we'll try not to bother you too much, but even with that, we'd like to try and stick to 15 minutes for each side with, of course, the appellant reserving some time for rebuttal. With that, if you could introduce yourselves and tell us which side you're arguing for, that would be helpful. Good afternoon, justices. My name is James Thompson, and I'm appearing on behalf of the appellant, Jason Berg. Good afternoon, your honors. I'm Sarah Hornstra, and I am arguing on behalf of the Superintendent of Police. Okay. All right. Mr. Thompson, take it away. Thank you, justices. May it please the court. The two issues that I would like to address to the court is the delay and the prejudice. Certainly, the department has a need to be able to effectively and efficiently enforce their disciplinary process, but that cuts both ways. Collectively, management and labor considered this issue and determined that five years was a reasonable time for investigations such as this to conclude. It's not an absolute time, but it's a reasonable time. It allows the institution the ability to effectively and efficiently enforce their disciplinary process. On the other hand, delays can have a detrimental effect to both the institution and their ability to enforce their disciplinary process. It also affects the member's rights or the employee's rights, and it can prejudice the employees. That, we believe, is exactly what happened in this matter. You have the burden to show prejudice. Correct. Where have you met that burden? While the focus on the case law is with respect to the officer continuing to receive compensation, there is an equal right and interest on behalf of the officer or the employee to have the fair ability to defend their career or their employment. In this particular instance, Justice, there was only one material witness in this case, and that material witness was unavailable to provide testimony to the board. First of all, there is a sworn statement under oath in litigation in which he had his counsel at the table asking questions. It was an evidence deposition taken in federal court. What you're saying then, if somebody has to be alive in order for otherwise somebody's prejudiced? Well, Judge, what I'm saying, first of all, it was not an evidence deposition. It was a there's no discovery deposition in federal court. Okay. You can't say that. In fact, I think the briefs call it evidence deposition. There is no such thing in federal court. I stand corrected, Justice. But what I would like to point out to you about that deposition is there was one attorney that was representing all three defendants at that deposition. Individually, Officer Goffrin, individually, Officer Berg, and the city of Chicago. Those three interests are not perfectly aligned. If they're not aligned and if there's a conflict, then that's the problem that he had at that time. I mean, a lawyer shouldn't have a conflict with his clients. So are you saying, that's not our problem. That was a problem then. If he wanted to have a conflict, he apparently okayed that kind of situation, but that doesn't show prejudice. The attorney for the city asked 248 questions. 14% of those questions were arguably related to the events that occurred with respect to Officer Berg. 86% of those questions were irrelevant to the allegations that were brought against Officer Berg at the police board. But percentages isn't going to, that doesn't show prejudice. I mean, where again, what was it that is prejudicial? You haven't specified exactly what it was that prejudiced him. I mean, to me, your brief is very vague on that. You allude to things, there's speculation, but I'm looking, we need to have the law, case law says you have the burden of showing some specifics. So the deposition was deficient in the following manners, Justice. It failed to that were on scene, including the supervising Sergeant. That would be easily remedied by showing the witness, the photographs of the individual officers that were on scene, which we would have done if we had the opportunity to examine that. You have the opportunity, you had an opportunity at a hearing, you could have brought in people, you could have taken depositions with regard to what happened with the superintendent's there after the hearing. You could have called people. Depositions are permitted in the administration. But one thing that I would like to point out to you relative to the prejudice to the defense of Officer Berg is that we are not provided with the investigative file or the discovery of the investigation until those charges are filed. So we didn't receive any of that information or evidence for our purposes of defense until 2019, which is approximately 10 years, nine years after the event happened. Yes, that creates an inability and prejudices your ability to complete a defense. For instance, where this incident happened was not in a residential neighborhood, it was an apartment complex. It prevented us the ability, even though we hired a private investigator to go out and canvas that area to find people that had witnessed or potentially witnessed what occurred to ask them specifically whether or not they took photographs, whether or not there were videos. It prevented us from identifying the officers that arrived in the security office that day. So that delay is prejudicial to creating a defense. In essence, the discovery that we received was too late. Here's what you got. And this is all that you're going to receive from us relative to this. But that happens in every case, right? It certainly doesn't happen in the cases that I've had experience and it doesn't happen. But it happens in every case that you said, in every case, you know, when the investigation got done. So but your complaint is that between 2014 and 2019, nothing occurred, right? Right. Okay. So that five year delay. But again, delay, the case law has said that that type of delay is not enough. In and of itself, it has to be something more. Is there anything more? Well, Chisholm, the case in Chisholm, the court referenced the fact that there was no evidence that a material witness was unable to testify. Well, in this particular case, the witness was not only unable to testify, the witness was deceased. And we never had the opportunity to talk to interview cross examine that material witness. And the board relied on the testimony in that deposition. And to point out in that deposition, Your Honor, is that, first of all, the deposition itself is latent with to consider important credibility issues like tone of voice, expressions, gestures. And the other point that I would like to make is there is a difference between providing a deposition testimony and testimony before the court witnesses then experience the weight of the proceedings. And what happens at a trial or what happens at a administrative hearing when a witness feels the proceedings is that witnesses now sometimes recall facts or events that they didn't recall previously, or the certainty under which they believe that they recall facts are now diminished and diluted. And it provides the federal court, they read depositions all the time with somebody who's been deposed evidence deposition, they read it, if the person's unavailable. Well, right, and have the state court to that happens. So there's no law that says a rule that says you have to have a live witness when you have an evidence deposition. No, judge, you're right about that. And I appreciate that point. But customarily, the deposition that is relied upon or is read in lieu of the witness is contained within that very the proceeding in which the deposition occurred. And there are specific reasons why that happens. This is far from that we're talking about utilizing a deposition in a different proceeding, a different venue with different allegations with different attorneys, attorneys that haven't had the opportunity to cross examine that witness. And that testimony is used nine years later. So that is far from the typical example of what happens in federal court. It's within the very proceeding that the deposition occurs. Okay, but this was the same event that he was being deposed about the same night, the same event, the same thing that happened. It's a different event. It was a different event. But the allegations in the complaint in the civil proceeding are different than the allegations that were presented to Officer Berg in the administrative proceeding. Ultimately, the issue in the civil proceeding was one, liability, and two, compensation. Those are not the issues that are presented to Officer or alleged against Officer Berg in the administrative proceeding. There is a different focus. There's a different line of questioning that needs to be recognized as counsel for Officer Berg that what we would have certainly explored relative to those complaints. And what ended up happening was, is that the deposition by counsel was imputed on us as counsels for Officer Berg in a different proceeding. And I think it was pointed out in the dissent, the deficiencies in the dissent in the police board pointed out the deficiencies of the examination of the witness in the civil proceeding, particularly as it related to the issues that were presented by the city and the allegations in the administrative proceeding. And there's a list of questions that I would have asked this witness as it relates to the administrative proceeding. Where were the officers? Here are the officers. Here's the photographs of the vehicles. Which officer exited which vehicle at what particular time? Where was the... Let's go. As your argument, are you making a due process argument now? I am, Judge. I'm making a due process argument because we both had the latches argument and due process allegation issue, Judge. Yeah, right. So this is the due process argument. Just wanted to make sure. Okay. But you haven't mentioned due process and the case law, again, doesn't seem to support the due process argument. Well, the due process argument revolves around the fact that whether or not the administrative proceeding was a fair process and whether or not Officer Berg had a fair opportunity to defend himself in his career in that proceeding. And as the board pointed out, the tiebreaker in essence was the deposition testimony from the witness, Mr. De La Rosa. And that was unfair to Officer Berg because his attorneys did not have the opportunity to examine that witness in the administrative proceedings as it specifically relates to the allegations of discipline that were brought against Officer Berg in those proceedings. And the board considered the testimony in the civil proceeding as in nature is the same as it would have been in the administrative proceeding. And my argument that is that's not true. I just want to make sure I understand your argument. The crux of your argument is the lack of opportunity to examine De La Rosa on the issues with regard to Berg. As it relates to Officer Berg, correct. Beyond that, because I want to make sure I have the whole picture, is there anything else that goes into that ball of wax that says prejudice? Other than that deposition and the unavailability of him? No, that is the point. That's my question. So your whole argument on due process resolves around that single, because you make a lot of arguments in your brief, but with regard to due process and talk about cases. And there's some other things that you with the De La Rosa availability and the fact that his deposition was taken another case under different circumstances, different attorney and so forth. So that am I correctly enunciating your position? You are justice. I would just add that it was the material witness. It wasn't a collateral witness. It was the singular material witness in the case. Okay. I appreciate that. Thank you. Do you want to talk about your Lachey's argument? Oh, I think that the Lachey's argument for there to be this kind of delay, there needs to be some justification as to the delay. And as I pointed out before, yes, there's no hard rule as to what time period constitutes an unacceptable delay. But that certainly doesn't suggest that we're talking about indefinite period of time or something that goes into infinity. And I think the court can look to guidance from where management labor meets where they talk about and express promptness and the five-year period seems to be reasonable. We can make exceptions, but they need to be compelling or they need to be exceptional. And none of that occurred. The five-year period has to do with investigation. And here, not only that, he got paid. I mean, if this had been earlier and the result was the same, he would have been cut off much earlier with regard to his compensation. Is that correct? No, Justice. That's not entirely accurate. What I would point out to you is that the compensation that Officer Berg was receiving during this period of time was derived from his disability pension. That's controlled by a separate statute. And it's also at 75%, not 100%. So the city could not have terminated that compensation if they wanted to. So it's not that even that's an unusual issue. So it wasn't as if the city of Chicago continued to pay him his regular wages. No, his income was being derived from a different source, which true, it was inert from the benefit of his employment with the city. But it was not in the control of the city. For the entire time that this case was pending, he was not on salary during any of that time? He was, Justice. He was on salary from 2010 to... I believe it was approximately 2015 when he was working as a Chicago police officer and he was struck by a drunk driver and broke his back and had multiple surgeries. But for at least approximately half of that period of time from the date of the incident to when the hearing actually occurred, no, it wasn't wages from the city of Chicago per se. It was from his disability pension. Well, I think Justice Hyman's point was if he had been, if the hearing had happened within six months or a year and he had the same result and he got fired, he wouldn't have gotten any CPD salary at all. And he wouldn't have been on duty to get his disability pension benefits. So he was still getting something from some source until they finally held this hearing. So you could argue about whether or not he was going to win or he was going to lose the administrative hearing case. Obviously, if he won the administrative hearing case, he'd still be on disability, but we can't look back and rewind the clock and say he wouldn't have been struck by that car. We don't know. We do know that he was on salary longer than he would have been if they'd held this hearing in any kind of expeditious way. And we do know that he benefited from that to be able to be on disability. So I'm wrestling with the prejudice part here on the money part. I mean, I understand your point about the hearing, the due process part. I'm just having a hard time dealing with the money part. I don't see that there was prejudice there. There isn't, Judge Justice, and I'm conceding that issue that he did receive income and per the case law, the fact that he received income is not a prejudice. And I concede that point. My focus on prejudice has singularly to do with the hearing itself and his inability to fairly defend himself and defend his employment right in his career. And that's where the prejudice occurred. Anything else? Any other questions? No. And Ms. Hornstra. Thank you. May it please the court. Good afternoon, your honors. The police board voted to discharge Jason Berg from his position as a police officer based on the board's findings that Berg violated multiple CPD rules when he responded to this scene where he let a fellow two civilians. He didn't detain Goffron. He didn't report it. We know the facts. The question, as we've just discussed, boils down to one issue, and that is the unavailability of the most important witness to these events, who was an independent individual, right, who was unavailable at the time of the hearing and whose deposition or not deposition was taken an evidentiary deposition in a different case under different circumstances by different counsel. Why doesn't that meet the due process requirement? Oh, that's correct. The issue on the appeal is the delay. And I have a few responses to the point. You know, I would like to take issue with something Mr. Thompson said in characterizing this witness, De La Rosa, as the material witness to this case. He was a witness to the case, but we had two material witnesses to the case that testified before the board. Officer Berg himself presented his version of events. Heather Razzani, the victim, testified. And, you know, they both both of those witnesses gave statements to IPRA right after the incident. They both made reports. They were both deposed. So we have their their accounts of the incident memorialized from the very beginning. De La Rosa was also a witness. And as your honor points out, he was really the independent witness in this. And, you know, it's unfortunate that he wasn't available to testify before the board. But we do have his account preserved based on his deposition. Berg's counsel was there and able to to depose him. What's important, though, is that De La Rosa's account corroborated in significant respects Razzani's account. And there is no indication that any questioning of De La Rosa, had he been able to testify, the police board would have yielded anything that would have contradicted Razzani's testimony. The. How do we know that? Sorry. How do we know it would not have contradicted? I mean, Mr. Thompson would have had the opportunity to to examine. And obviously he began to ask a lot of questions here that he might have asked there. So he would have gone into different areas than what occurred at the federal case. Right. So there was some speculation that Mr. Thompson raised about, you know, trying to identify specific officers who were on the scene. But what we do know is that De La Rosa testified that, well, Officer Berg himself testified that he was the first officer who arrived on the scene. According to De La Rosa, only one officer on the scene talked to Goffron and only one officer talked to Goffron and Razzani. And that De La Rosa did not hear what the substance of those conversations were. So unless De La Rosa were to contradict his earlier testimony, he wouldn't have anything to say about the substance of that interaction. He also said that the officer who talked to Goffron in describing them described him physically in a way that was consistent with Berg's description and the way Razzani identified him. And again, by Berg's own account, he was the first person who got there. His account was he was the first officer who got there and Goffron was never on the scene. So his account wasn't Goffron was there talking to somebody else and somebody else let him go. There was speculation about that possibility by the dissenting member of the board. But based on what we have from De La Rosa's testimony, unless he were to flatly contradict himself, he wouldn't be able to say that it was some other officer. So are you saying then that if in fact that argument could be made, that there was some evidence that this witness would have contradicted the other witnesses, that you wouldn't be taking the position that you're taking now in this case? I mean, certainly there's just there's not the showing of prejudice because there's not, you know, a reasonable, there's nothing beyond speculation and speculation rests on this witness having to contradict himself. You know, the burden would still be on the, you know, on the officer in this case to prove by clear, you know, clearly and substantially prejudice either for, I mean, I think it's really the same inquiry, whether we're talking about latches or due process. But, but, you know, even in the criminal context, a defendant, if they're talking about a prejudice because of delay, and, you know, unfortunately, it happens in many cases that due to the passage, how do you justify the lengthy delay that occurred in this case? To be honest, Your Honor, the record doesn't provide an explanation for the delay in this case. We don't, we don't think that it was reasonable. This is not how investigations should, should proceed. But, you know, as to whether, you know, the discipline has to be held in, you know, basically, we have to, we have to overlook this, you know, serious infraction of police roles. Because of delay, what it comes down to is the need of the officer to show material prejudice, either for purposes of latches or, or due process. And in this case, we had very egregious behavior and this sort of, you know, this sort of conduct, allowing a fellow officer to get away with, you know, brutalizing civilians is exactly the sort of behavior that undermines trust in the police department. The police department, you know, counsel tells us to look at Polis, which was a much longer period of time. What are, in your opinion, the two or three major differences? If there are a difference, I assume you say Polis doesn't apply. In that case, if it applies, let me know. If it doesn't apply, tell me why. Oh, well, it doesn't, it doesn't provide, I mean, it doesn't bind this it's, you know, I understand that. Right. Even assuming the board had the authority to do what it did in that case. And, you know, the police board decided Polis in 2018. It rejected the latches and due process arguments in this case in 2020, after deciding Polis, there was a longer length of time in Polis. It was 17 years. They were, you know, the infractions were not duty related. It had to do with not disclosing misdemeanor convictions and ownership of a, a license interest, less serious infractions and a longer period of time. The board in that case saw fit to dismiss the charges based on that. But, you know, the police board, which at the time of the decision, in this case, five of the nine members were the same members, looked at this case and came to a different assessment. So, you know, what the board decided to do in Polis doesn't at all govern what... No, I'm not saying it governs, but whether it has a... Right. Yeah. But the board obviously thought this case was different and, you know, it acknowledged and cited Polis in, in its decision in this case. You know, I did want to mention there was, there was a reference to a five-year period. And I think as, you know, Mr. Thompson acknowledges, there's not any strict time limits on that. The five-year reference comes from the collective court belief that that argument had been made, had been waived because it wasn't raised before the board. But we also would contend that it's not relevant to the due process or Latch's argument. There were some, you know, just the general concerns about the inability to gather evidence in this case due to the time period. You know, this was, this apartment complex is open to the public when this incident happened. Ms. Rosani and Mr. Cordero, they didn't live there. They were wandering through there. That's what precipitated this whole event was that they were asked to leave by the security. So, you know, counsel for the officer had every opportunity to, you know, investigate that scene. We know who the security officers who were on duty that night, in addition to De La Rosa, there was Ron Kaczmarek. We know who the other officers from the police records, we know who the other officers were who responded to that. So certainly the officer could have sought, you know, more evidence from them, could have subpoenaed them. And it's really just nothing but speculation that having De La Rosa available for further cross-examination would have made a difference in this case and weighed against the superintendent's interest in not continuing to employ an officer found, you know, to have been this dishonest, covering up for a fellow employee. You know, the superintendent since about 2008 has had a strict policy of seeking separation for any officer, you know, found to have made false statements like this. We know that prosecutors, both in federal and state cases, will not call officers who've been discredited in this fashion to call. So they really cannot effectively perform as members of the force. And again, we had, you know, contemporaneous evidence in the form of the 911 transcript, the dispatch reports, I'll corroborate Heather Rizzani's account of what happened, that she told Officer Berg, you know, this guy had a gun, he beat up my boyfriend, why are you letting him leave? And there's just, you know, I mean, we're not, the officer doesn't contend that the weight of the evidence doesn't support the finding against him, nor does he contend that discharge wouldn't be and substantially prejudiced his ability to present a defense, and it did not. And if your honors have no further questions, we'd ask that the board's decision and the circuit court's decision be affirmed, but I'm happy to entertain any other questions. Any other questions for Ms. Hofstra? Okay, Mr. Thompson, rebuttal? Yes, thank you. First of all, the board made it very clear in their decision, all the board members, including the dissenting board member, that this delay is unexcusable and unconscionable. And in fact, the hearing officer in dissent said that this delay and the fact that Mr. De La Rosa wasn't present unfairly prejudiced Officer Berg and hindered his ability to provide a meaningful defense. But I want to return to something that the city said about identification. Mr. De La Rosa was unable to even identify Officer Goffrin, the offender who was riding around in his vehicle during the deposition. His identification of anybody was very vague. And if counsel's referencing that Mr. De La Rosa identified Officer Berg based upon description, that's not accurate. At best, what Mr. De La Rosa said that there was two officers that had the same general description. One of them left and one of them stayed and had some conversation with Mr. Goffrin that he didn't hear. Well, clearly from our point of view, if that was what you observed, it wasn't Officer Berg that was the one that had any contact with Officer Goffrin, just like he said. And I wanted to want to point out that you haven't attacked the facts here. The argument solely has to delay. So that's really irrelevant for our consideration. Okay. Sorry, if I wasn't trying to make you lose your train of thought. You want to the point that I wish what I would make again in rebuttal. It's those very questionings of this witness with respect to identification. With respect to identification of Sergeant Colella, who was present, who per Ms. Razzani's testimony and per Mr. De La Rosa's testimony, must have been informed about all of this as well. When in fact, the sergeant said, no, Ms. Razzani never told me any such thing, never told me that anybody was there with a gun and never told me that anybody let her go. And I was on scene. So going back to the prejudice, we don't have the ability to talk and even interview Mr. De La Rosa before the proceeding actually started, let alone examining the material witness at the hearing. Why? Because of the delay in the proceedings and in bringing these charges. There's no explanation for it. The only thing that happened with that delay was every moment, every day, every week, every year, it continued to prejudice Officer Berg and his ability to fairly defend his property interest, which was his career during the proceedings before the police board. And that's our position, Justices. Thank you. Any questions? All right. Hearing none, Mr. Johnson, Ms. Hornstar, we thank you both for your excellent briefs and your very enlightening oral argument. We'll take this matter under consideration and we'll enter an order or an opinion forthwith. This matter is adjourned. Thank you. Thank you.